Good morning, Your Honor. My name is Bob Christie. I'm the attorney for the appellant, S.D. Deakin. I'd ask the Court to reserve two minutes for me for rebuttal. I'm here today on behalf of Officer Deakin, who seeks a reversal of the trial court's denial of qualified immunity. The sole claim remaining against him in the underlying case is the Section 1983 claim. And I'll move right into the argument. The issue before this Court, and it's been well-framed, both by this Court's decision and more recently by the Saucier v. Cass case, is whether or not an objectively reasonable officer in Officer Deakin's position could believe that there was probable cause to arrest Mr. Cairnes for what, on this record, are declarations on behalf or by his former spouse alleging what clearly would constitute harassment. What we have in this record and what is undisputed are two orders both of which are continuing in nature and both prohibit the exact conduct at issue here. The hang-up I submit at the trial court level and what you'll hear from my opponent is that there was one order issued in June of 1998 by the King County Superior Court, the first order in this case, prohibiting this conduct, that did contain an expiration date, and there were three subsequent modifications of that order. What stands in this record, uncontroverted, are two orders, one issued by the City of Pacific, that expressly prohibit harassment of Ms. Cairnes by telephone. That order was amended the following month in August of 1998. That order continues to contain language that the order is continuing in nature. So that order stood in effect, in legal effect, in August of 1998. And that order was amended in December of 1999 when Mr. Cairnes engaged in the conduct that was the, that resulted in the bench warrant for his arrest for harassing his ex-wife. What also stands in this record, uncontroverted, is a November, excuse me, a December 1998 dissolution decree. And that dissolution decree on its face contained language that expressly prohibited, in fact, on the face of the decree, Your Honor, is a reference, is a statement that violation of a restraining order in paragraph 3.8, this by the way is in the excerpt of record at page 86, violation of that restraining order with actual knowledge of its terms is a criminal offense in violation of Washington law. And it cites the statute, RCW 26.09. There's no question but that Mr. Cairnes received that decree. He signed for it, and his signature is on excerpt of record page 91. So there was probable cause for the arrest, there was no constitutional violation, and you never get farther than that in the court? It states, quote, a continuing restraining order is entered as follows. The husband is restrained from assaulting, harassing, molesting, or disturbing the peace of the other party, specifically of his ex-wife. So there's nothing in the record that ever modifies the continuing nature of that order. And further, there's nothing in the record that ever modifies the continuing nature of the orders entered by the city of Pacific. It is a strained construction that you will hear from my opposition to try to incorporate into either of these orders some limitation on the term of them. The other argument that you will hear is that in the certification of probable cause that my client prepared, he did not specifically reference the dissolution decree. Well, that argument has no merit, because as this Court has held clearly, and in fact, I believe, Your Honor, it was your opinion in Fuller v. M.G. Jewelry that the doctrine of probable cause, or of qualified immunity, does not require even that probable cause to arrest exists. Further, we have the recent decision by Judge Browning out of this Court in Alford v. Hainer, which said probable cause may still exist for a closely related offense, and in that, in this case, the exact conduct that he engaged in not only violated the city of Pacific order, again, a continuing order, but violated the prohibition against contact contained in the dissolution decree. So what stands in this record is clear evidence creating, as a matter of law, the existence of probable cause. Of course, that's not the standard for qualified immunity, and if this Court can determine that an objectively reasonable officer reading all of these orders could believe that his action in making the arrest, in seeking a bench warrant — Well, if he didn't do it, or if he said, well, what I did was I only called a couple of times to talk with the kids, and then you'd have a reasonable officer trying to interpret the meaning of these orders and whether or not that would be violated. But as I understand it here, there's no dispute as to what he did, and what he did was a violation of the order. If that's it, that's the end of the case, isn't it? Well, Your Honor, that is the end of the case. Now, there is in this record, to be fair, there is a declaration by Mr. Cairns denying that he intended to harass and that he was calling his wife simply to arrange custody. Of course, that is not the test for probable cause. What is in the record, and you're correctly referring to, are two sworn statements by Ms. Cairns repeating the voicemails that were left by her ex-husband. So maybe then you do get into the question of the officer's interpretation as to whether, listening to both sides, that he would interpret this as a violation of the order. Then you get the problem — or reasonable officer test, I guess. Well, the declaration by Mr. Cairns doesn't come until he's opposing the summary judgment, Your Honor. So the only — the information presented to the officer is that Mr. Cairns is calling and not making statements about can I arrange custody. He's making statements to the effect, the more jail time I spend, the harder it's going to be on the person that he is accusing his ex-wife of having an affair with. That isn't arranging custody. That is harassment and specifically prohibited by two continuing orders. I'll reserve the balance of my time. Thank you. May it please the Court, my name is Stephen Harpold, representing Mr. Cairns. The Court is well aware of the facts, so I'll go straight to the argument. It should be very clear, it can be discerned from the information which is in Appendix Pages 17 through 18, that Mr. Cairns was not charged with the crime of harassment. He was charged with the violation of a no-contact order. He is — he is being charged in this situation for the — for the crime of contacting his wife for purposes of exercising visitation for which he is granted specific permission vis-a-vis the orders of the superior court. It's — without going over each and every order, I want to make it very clear that the language of the order of June 22, 1998, by the superior court is that he is to be — he is restrained from various things, including, of course, harassment. But the language is — is boilerplate language. It talks about hurting, harming, in any way interfering with, but he isn't charged with that. He is being charged with breaking the no-contact order, and the particular contact that he broke was calling up to ask — to arrange for visitation. This order — What about the statement that — that Christy made about — in terms of — that doesn't sound like arranging to see your kids when you're talking about the more you do this, the more jail, and what about — and there's her — the man that she's accusing — he's accusing the wife of aborting with. Right. Right. And that's — that is in what the officer had to review. Well, that's correct, and that's — that's contained in his officer's statement or his certification of probable cause. The problem is, is that the protective orders, which goes back to June 22, 1998, and is contained all the way through, doesn't protect him. It protects her, and it protects her from certain boilerplate language contained in that — in that June 22, 1998 order. Is the word threatening in that order? Pardon? Threatening, harassing, are those words in there? I would have to look, Your Honor. I just don't hear you. It is — well, it very well could be — very well could be, Your Honor, but — I don't hear anything in that order about arranging to pick up the kids. Pardon? I don't hear anything in that statement about arranging to pick up the kids. Well, well, the — the June 22 order specifically required him — we had them between themselves, the parties I'm talking about, Pamela and my client, Mr. Carnes, to work out visitation between the parties. That — that order is the critical one because that's where he's given not only — not only is he restrained in a general sense, but he is also given specific permission to have visitation with his children, his two young daughters. That — And what is — what is the officer supposed to do, just go through this whole complex procedure, all these different orders, look at the dissolution agreement, before he decides — who issued the arrest warrant? Who issued the arrest warrant? Well, it came out of — it came out of King County. A magistrate, a judge. A judge, all right. Yeah. All right. But — but the problem is, this — And what does the arrest order tell the officer to do? Tells him to arrest him. Yeah. So why blame the officer? Well, because as opposed to a — a — a regular crime like an assault or something, this crime is based upon the existence of an order that my client breached, violated. He did not breach or violate any order. And it's the judge's fault. He's given permission to — It's the judge's fault. He shouldn't have issued that arrest warrant. Well, Your Honor, judges in that — in a situation are not equipped. They don't have the staff. They can — all they can do is look at material that's submitted to them. And the material submitted in the officer's statement, which is found on — in appendix — page 16, and in the Certification of Termination of Probable Cause, which is number 17, or page 17, the officer made conclusory statements and said, these orders have been violated. But it sounds like you want the — the officer to be judge and jury, which is specifically what we tell officers not to be. Nope. No, that's — They're not supposed to ascertain, you know, if — if they have a trial later and say, well, the reason I was contacting wasn't to talk about the boyfriend or this, that, or the other, well, that's for a jury to decide or a judge in a court trial. But here, I think — I mean, you've got an arrest warrant. You've — you know, you've got the statements that certainly on their face seem to be something of a harassing nature. Well, the arrest warrant comes upon the certification of determination of a probable cause. You didn't have an arrest warrant before that point in time, if I'm understanding your question. But I guess what you're — but you're saying, like, the officer should go out, you know, check with the — you know, get both sides together, well, let me hear your side, let me hear your side, or — and ascertain here. And I don't think that's what they're supposed to do. No, Your Honor, they must make a determination that there is an order in place which prohibits the particular conduct. They can't — he can't assume these facts. Well, it looks like there's about a whole bunch of orders. Yes. I wrote about 10 pages just figuring out all those orders. No, no, I understand that, Your Honor. But the crime here that's being asserted is not harassment, it's not breach of the restraining orders or anything else. It is the contact which was specifically permitted for purposes of exercising his child support. In fact, the officer, Deacon himself, was at the hearing when the July 22 no-contact order was modified on August 18, and excerpt to record, I think it's 52, page 52, the officer acknowledges that the modification of the no-contact order was for purposes of allowing Mr. Carnes to exercise visitation. Yet he turned around in his certification of determination of probable cause and says, this is a crime because he contacted Pamela Carnes for purposes of visitation. He wasn't harassing her. He wasn't doing anything. He called her for arranging visitation, which he has been granted. Well, I'm looking at the certificate for determination of probable cause. Deacon signed it, said E.R. 80. OK. And he states in there that Brad had been calling and leaving unwanted messages. Brad was leaving messages on her voicemail. Brad called and left messages, a voicemail on 7-28, 7-29, 8-1, 8-3. And then he goes on to say that these messages on the voicemail were in violation of the no-contact order in the municipal court and a protection order issued by the King County Superior Court. The orders were both valid and listed Carnes as the respondent. And then in one of them he states, the more jail time I do, the higher price Vickas will pay. And Vickas is a subject Brad has accused Pam of having an affair with. And you say he was calling to arrange visitation. Well, if you look at the page 16, the officer's statement on the appendix. I put it in the appendix for easy reference. I apologize. The whole genesis of this charge. Oh, I'm sorry. Excuse me. Appendix to your brief. Yes. It's the appendix to my brief, Your Honor. Excuse me. 16. Yes. All right. Okay. The whole genesis of this charge is that conduct which occurred on apparently on August 9 when Mr. Carnes called up and I'm reading now, told her he was going to be in town and wanted to see the kids. This is exactly what was provided him expressly in the order of protection back in June 22, 1998. And I must emphasize to the Court that he's not being charged with harassment. He's being charged with breaking a no-contact order. But the no-contact order was modified on August 18 to allow contact. In fact, the officer who submitted these charges was in court and stated that the modification of the no-contact order was for purposes of Mr. Carnes's visitation. He is primed to get visitation. There is nothing in there that could reasonably be interpreted as being harassing. But what's more important is that he's not being charged with harassment here. He's being charged. You look at pages 18 and 19 with the information. That's the new appendix, Your Honor. He's being charged with violating the no-contact order. But the no-contact order in the place allows him to have contact for purposes of visitation. All right. So what's the big deal here? Tell me. Well, the big deal is, Your Honor, he has been charged with a crime that he was specifically allowed to do by court order. There is no court order that can serve as a basis in any regard. What happened to that case? Well, the case was dismissed on a motion after Mr. Carnes served 30 days in jail. And it was dismissed by the judge, state judge, of course, and he was released. But the judge had signed the arrest warrant. Nothing I know of, Your Honor. No, it's not that I recall. Why did it take 30 days to bring the matter before him? I have no idea, Your Honor. I wasn't involved in the case at that point in time. But he wasn't – he was charged with no valid – I mean, violating the no-contact order, not with harassment. And I think – it looks like my time is up. No, wait. Thank you, Your Honor. Respectfully, Your Honor, the argument that you've heard is absurd. The order in effect – one of the orders in effect in the dissolution decree – Well, the trouble with lawyers today is they're all, you know, knocking each other around. Why don't you just say the argument you just heard from my honorable – He is an honorable and respected opponent, and I apologize and withdraw my comment, Your Honor. It doesn't really hold water. It doesn't quite hold water, and let me explain why. It's better. I'm looking at page 90 of my excerpt of record, which is the language containing the continuing restraining order issued by the Superior Court, which restrains the husband from engaging in harassing conduct. And I submit that you cannot color the comments that are set forth in Ms. Karen's sworn statement, which is found in excerpt of record, page 93, as anything other than harassing. He – she repeats in here that he calls on three times. He's angry, accusing me of having an affair. He's delusional. The second message is that he says my friend, Vicus, needs a restraining order. And the third comment, which is the court notes is the one that was repeated in the certification of probable cause, states – he says to his ex-wife, the more jail time I do, the more – the higher the price that Vicus is going to pay. In Washington, under RCW 265110, an officer that has probable cause to believe that a protective order has been violated is mandated by law to make an arrest. That's exactly what happened here. The issue is before you on a question of qualified immunity. And it cannot be said that no reasonable officer reading these orders and the sworn testimony of Ms. Vicus is not probable cause to arrest. Thank you. That's it, honorable gentleman. And this matter will stand. And I will now go to the next item.
judges: Pregerson, Thompson, Callahan